UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SATNAM SINGH (A-Number: 221-347-171),

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY,

Respondent.

Case No.  2:25-cv-3724-DJC-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Satnam Singh entered the United States in 2024 and was re-detained by ICE in 2025.  Petitioner, proceeding with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention violates the Fifth Amendment.  For the following reasons, I recommend that the petition be granted and that petitioner be afforded a bond hearing.

**Background**

On December 9, 2024, petitioner entered the United States and was detained by the Department of Homeland Security ("DHS").  ECF No. 12 ¶ 50; ECF No. 15-1 at 3.  While petitioner was detained, he applied for asylum.  *Id*. ¶ 51.  On January 13, 2025, DHS released petitioner from custody on his own recognizance.  ECF No. 12 ¶ 52.

On March 9, 2025, petitioner was arrested and charged in California with: "(1) battery with serious bodily injury, (2) criminal threats, (3) assault with a deadly weapon, (4) conspiracy

1

to commit a crime, and (5) attempting to dissuade a victim from prosecuting."  ECF No. 15 at 1-2 (citing ECF No. 15-2 at 1).  All charges were dismissed in September 2025.  *See* ECF No. 12-3 ¶ 5; ECF No. 12-4.

On April 22, 2025—while petitioner's charges were still pending—petitioner was re-detained by ICE without notice or a pre-deprivation hearing.  ECF No. 15-1 at 2-3.  Since his re-detention, petitioner has not been afforded a bond hearing.  ECF No. 12 ¶ 9.

On February 23, 2026, an immigration judge ("IJ") entered an order of removal.  ECF No. 15-5 at 20.  Petitioner had until March 30, 2026, to appeal that decision.  *Id*. at 23.  In a declaration accompanying his motion for temporary restraining order, petitioner stated he was "in the process of filing an Appeal to the IJ's decision."  ECF No. 13-1 ¶ 31.  Respondent neither contests that representation nor argues that petitioner has not appealed the IJ's order.  Moreover, public records from the Executive Office for Immigration Review indicate that petitioner's appeal was received on February 25, 2026.  *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited April 20, 2026).  Accordingly, the IJ's order of removal is not final.  *See* 8 U.S.C. § 1101(a)(47)(B).

**Procedural History**

On February 16, 2026, petitioner filed an amended petition for writ of habeas corpus, ECF No. 12.  On March 2, 2026, petitioner filed a motion for temporary restraining order, ECF No. 13.  On March 5, 2026, respondent filed a combined answer to the petition and opposition to the issuance of injunctive relief, ECF No. 15.  Thereafter, the court denied petitioner's motion for temporary restraining order and referred the matter to me.  *See* ECF No. 17; Local Rule 302(c)(17).  The matter is submitted.  *See* ECF No. 18 at 2.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a

petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner alleges that his ongoing re-detention without a bond hearing violates the Fifth Amendment.[1] ECF No. 12 ¶¶ 63-66. Respondent argues that petitioner's detention is mandatory under 8 U.S.C. § 1226(c)(1)(E). ECF No. 15 at 4. I first determine whether section 1226(c) applies to petitioner, and then I analyze his due process claim.

Under section 1226(c), the attorney general "shall take into custody" any noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."[2] 8 U.S.C. § 1226(c)(1)(E)(ii). The term "serious bodily injury" has the meaning given such term "in the jurisdiction in which the acts occurred." *Id.* § 1226(c)(2). In California—where petitioner was arrested and charged—a "serious bodily injury" means "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." Cal. Penal Code § 243(f)(4).

---

[1] Because the petition should be granted on the basis of this due process claim alone, I find it unnecessary to address petitioner's other claims, which are brought under the Fifth Amendment, Fourth Amendment, and the Administrative Procedure Act. *See* ECF No. 12 ¶¶ 67-81.

[2] The statute also requires that the noncitizen be "inadmissible" under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7). 8 U.S.C. § 1226(c)(1)(E)(i). Because petitioner is "present in the United States without being admitted or paroled," he is "inadmissible" under § 1182(a)(6)(A). *See* 8 U.S.C. § 1182(a)(6)(A)(i).

3

Petitioner, as noted, was charged with battery with a serious bodily injury in violation of California Penal Code § 243. ECF No. 15-2 at 1-2. This subsection applies "[w]hen a battery is committed against any person and serious bodily injury is inflicted on the person." Cal. Penal Code § 243(d). At time of his re-detention in April 2025, it appears that section 1226(c)(1)(E) applied to petitioner because he had been arrested and charged with a crime resulting in serious bodily injury. *See* 8 U.S.C. § 1226(c)(1)(E)(ii).

Circumstances changed, however, in September 2025 when all charges against petitioner were dismissed. *See* ECF No. 12-3 ¶ 5; ECF No. 12-4. "Indeed, several courts within the Ninth Circuit have found that the Constitution cannot permit mandatory detention without a bond hearing under § 1226(c) where the predicate charge has been dismissed." *Montalvan Reyes v. Warden*, No. 1:26-cv-0441-DC-JDP, 2026 WL 760264, at *3 (E.D. Cal. Mar. 18, 2026) (collecting cases). As the court held in *E.C. v. Noem*, "if § 1226(c) mandates [a petitioner's] detention, with no regard for the fact that he was acquitted of all criminal charges through the procedural protections provided in the underlying criminal proceedings, that provision would be unconstitutional as applied" to that petitioner. No. 2:25-cv-1789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025); *see also Singh v. Chestnut*, No. 1:26-cv-0546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) (granting the petition, where the petitioner was purportedly detained under section 1226(c), because prosecutors later concluded that "they did not have sufficient evidence to charge [the petitioner] with a crime"); *Gopal B. v. Albarran*, No. 1:26-cv-1083-TLN-CKD, 2026 WL 504736, at *3 (E.D. Cal. Feb. 24, 2026) ("Requiring mandatory detention because of a mere arrest and charge, which prosecutors eventually dismissed after Petitioner pleaded guilty to a lesser charge, raises significant due process concerns."). I agree with other courts that have confronted this issue and find that, after the charges were dismissed, petitioner was no longer subject to mandatory detention under section 1226(c). In light of that conclusion, I turn to his due process claim.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest

4

accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  *Id.* (quotations omitted).  Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty."  *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release.  *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026).  I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in 2025. ECF No. 12 ¶ 50; ECF No. 15-1 at 3. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for over three months; during that time, he lived with his aunt and uncle, assisted with household duties, volunteered at a local Sikh temple, and established relationships with other individuals in his community. *See* ECF No. 12-1 ¶¶ 6-11. Petitioner thereby formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release.[3] *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Prior

---

[3] Respondent does not contest petitioner's allegation that he has "a protected liberty interest in . . . ongoing freedom from confinement." *See* ECF No. 12 ¶ 48; ECF No. 15.

to his re-detention, petitioner had been released in the United States under the supervision of ICE for over three months. During that time, as noted, petitioner established his private interest in continued release. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner in 2025, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government still maintains that petitioner is subject to mandatory detention indicates that it has not taken sufficient efforts to prevent erroneous deprivation of petitioner's liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025),

7

*report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not provided any information about the additional burden that would fall on them as a result of being required to provide a bond hearing. *See* ECF No. 15.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's ongoing re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 12 at 21. Respondent argues that "the only appropriate relief is a bond hearing, not release from detention." ECF No. 15 at 8.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The Court has also observed, however, that "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). "Indeed, common-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances." *Id.*; *see also Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (The federal habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody").

Before re-detaining petitioner, due process would ordinarily require a pre-deprivation hearing. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."). However, "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025). For example, in *Martinez Hernandez v. Andrews*, the court held

8

that, where the petitioner had allegedly violated his parole, a post-deprivation hearing was appropriate because it was "at least arguable that providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."  No. 1:25-cv-1035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025).

Here, ICE re-detained petitioner approximately six weeks after he was arrested and charged.  *See* ECF No. 15-1 at 2-3.  There is no evidence indicating when ICE learned about petitioner's arrest, or whether petitioner had any contact with ICE between his arrest and re-detention.  In the absence of evidence to the contrary, I find that it is "at least arguable that providing [petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."  *See Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *12.  Accordingly, the present record does not establish that petitioner was constitutionally entitled to a pre-deprivation hearing.[4]

Due process still required, however, that petitioner be afforded a "prompt post-deprivation hearing."  *See Guillermo M.R.*, 791 F. Supp. 3d at 1036.  Petitioner, as noted, has not been afforded such a hearing, even after his state charges were dropped in September 2025—thereby no longer subjecting him to mandatory detention under section 1226(c).  Accordingly, I find that the appropriate remedy is a bond hearing.  *See Singh*, 2026 WL 266021, at *4 (ordering a bond hearing after prosecutors declined to charge petitioner with the crime that resulted in his mandatory detention under section 1226(c)).

Lastly, respondent argues that, at petitioner's bond hearing, "the Constitution does not require the government to bear the burden of proving that the noncitizen will be a flight risk or danger—much less that the government be subject to a clear-and-convincing-evidence standard—to justify temporary detention pending removal proceedings."  ECF No. 15 at 8.  I disagree.  Where, as here, a bond hearing is necessary to satisfy due process, the government must show by

[4] While the court held in *Guillermo M.R.* that a six-week period between the petitioner's arrest and re-detention demonstrated a "lack of urgency," the instant action is readily distinguishable; there, ICE learned of the petitioner's arrest the day after he was arrested, interviewed the petitioner soon thereafter, and then waited an additional five weeks to re-detain him.  *See* 791 F. Supp. 3d at 1028, 1036.  Here, on the contrary, there is no evidence that would support a finding that ICE did not act with urgency.

clear and convincing evidence that a petitioner is a danger to the community or a flight risk. In *Martinez v. Clark*, the petitioner was subject to mandatory detention under section 1226(c) and, after he filed a habeas petition, the district court ordered that he receive a bond hearing where the government must "show by clear and convincing evidence that [he] presents a flight risk or a danger to the community." 124 F.4th 775, 780 (9th Cir. 2024). On appeal, the petitioner claimed that the Board of Immigration Appeals ("BIA") had applied the wrong burden of proof. *Id*. at 785. The Court of Appeals, however, held that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [petitioner] is a danger to the community." *Id*. In the wake of *Martinez*, district courts in this Circuit have held that, where due process requires a bond hearing, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *See Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases). Accordingly, the government shall bear the burden of proof at petitioner's bond hearing.

## Conclusion

Based on the foregoing, it is hereby RECOMMENDED that:

1. The first amended petition for writ of habeas corpus, ECF No. 12, be GRANTED.

2. Petitioner (A-Number: 221-347-171) be provided a bond hearing within five days of the date of the court's order. At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. Respondent be ordered to file a status report, within five days of the bond hearing, confirming that the hearing has been provided.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed

within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    April 22, 2026                    _____
                                            JEREMY D. PETERSON
                                            UNITED STATES MAGISTRATE JUDGE

11